UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD KIRK BROWN,                 Case No. 09-14211

       Plaintiff,                            Lawrence P. Zatkoff
vs.                                         United States District Judge

CO HARRINGTON, *et al.*,            Michael Hluchaniuk
                                                United States Magistrate Judge

       Defendants.
_____/

# REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 20)

**I.    PROCEDURAL HISTORY**

This is a prisoner civil rights action filed on September 24, 2009 in the Western District of Michigan and subsequently transferred to this Court on October 27, 2009. (Dkt. 1). Plaintiff alleges that defendants violated his rights under the United States Constitution. On February 18, 2010, this case was referred to the undersigned for all pretrial purposes by District Judge Lawrence P. Zatkoff. (Dkt. 23).

On February 5, 2010, defendants Hogan, Harrington, Jackson, Oosterhof, Ferdew, Ludwick, Best, and Shaheen filed a motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies. (Dkt. 20). Plaintiff filed a response on March 19, 2010. (Dkt. 26). This matter is now ready for report

and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment based on a failure to exhaust administrative remedies as to claims and events that occurred after February 6, 2009 be **GRANTED** and that defendants' motion for summary judgment based on a failure to exhaust administrative remedies based on the February 6, 2009 grievance be **DENIED**.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Complaint

According to plaintiff's complaint, on February 6, 2009, defendant Shaheen refused plaintiff access to the law library to file his case with the supreme court, refused to make copies, or to notarize his documents. (Dkt. 1, p. 4). Plaintiff apparently attempted to resolve the issue with defendant Sheets, the grievance coordinator. Plaintiff then alleges that defendant Sheets told defendant Shaheen about his complaint and Shaheen told plaintiff that he was "in big trouble" and made threats regarding interference with his pending litigation and physical harm. Plaintiff alleges that he was subsequently assaulted by a correctional officer pursuant to the instruction of defendant Shaheen. *Id.* Plaintiff alleges that he wrote another grievance against defendant Shaheen and officer Harrington, but that defendant Sheets threw it away. (Dkt. 1, p. 5). Plaintiff also says he submitted

various kites to the library, along with filing a grievance and a letter to the warden about the threats and inference by staff. According to plaintiff, K. Best instructed defendant Sheets to throw away all of his grievances. *Id*. Plaintiff alleges that Harrington hit him in the face, instructed medical personnel to kick him, and would not let medical personnel treat him. *Id*.

Plaintiff also asserts that Best told Katy Hollenbeck to refuse to make copies of any complaints made against employees and to refuse access to the law library. (Dkt. 1, p. 8). Plaintiff alleges further assaults by Harrington and Jackson and says that inmates were paid off by them so they would not come forward about witnessing his beatings. (Dkt. 1, p. 9). Plaintiff claims that he was mentally and physically abused, which was ignored by staff and the warden. (Dkt. 1, p. 11).

B. <u>Grievance Procedure</u>

At the time plaintiff filed his grievance, MDOC Policy Directive 03.02.130, effective, July 9, 2007, was the applicable grievance procedure. (Dkt. 20-3, pp. 5-11). The MDOC grievance procedure explains that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." *Id*. The grievance procedure also requires that the information provided "is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)" and that "[d]ates,

times, places and names of all those involved in the issue being grieved are to be included." *Id*. (emphasis in original). Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly. *Id*.

Within five business days of attempting to resolve a dispute with staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator designated for the facility. *Id*. at *3. And, if the merits of the grievance are addressed, the grievant must be interviewed in order to "explain the grievance more completely" and to enable the respondent to "gather any additional information needed to respond to the grievance." *Id*. If the grievant is not interviewed, the reason must be included in the written response to the grievance. *Id*. In response to the Step I grievance, the respondent must identify all policies, rules, or procedures that are related to the issue or conduct grieved. *Id*. At Step I, the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance accepted," that the response was reviewed by the appropriate supervisor, and that a copy of the response is provided to the grievant by the due date. *Id*.

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II. *Id*. If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent. *Id*. The MDOC

grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. *Id.* For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id.* The Grievance Coordinator must then ensure that "any additional investigation was completed as necessary for each Step II grievance accepted...." *Id.*

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Grievance and Appeals Section. *Id.* A Step III appeal must be sent to the Grievance and Appeals Section within 10 business days after the prisoner receives the Step II response, or within 10 business days after the response was due. *Id.* If a Step III grievance involves medical care or treatment, the Grievance and Appeals Section must forward any such grievance to the Bureau of Health Care Services (BHCS), which must ensure that the grievance is investigated and a timely response provided. *Id.* The Manager of the Grievance and Appeals Section must ensure that any additional investigation is completed as necessary for Step III. *Id.*

C. <u>Plaintiff's Grievances</u>

Plaintiff filed two grievances through Step III: SLF 2009-02-203-17Z on February 6, 2009, and SLF 2009-02-204-28a, amended to 15b at Step III, also on February 6, 2009. (Dkt. 20-3). They are identical. One was rejected as

duplicative of the other. At Step I, plaintiff alleges the problem with the ARUS and RUM not giving him his requested 35 pages of photocopies, that an officer refused to let him out for chow, and said all the officers were going to "ride" plaintiff while he was at SLF. Defendants argue that because neither Step I grievance names the ARUS or RUM involved in the photocopy issue or the officer who refused to let plaintiff out for chow, that the grievances do not exhaust any claims except as to defendant Sheets, who is identified in the grievances.

A review of the grievance materials submitted by defendants show that the grievance SLF 09020203-17z was addressed on the merits at all three steps of the grievance appeal process. (Dkt. 20-3, pp. 14-17). Grievance SLF 09-0200203-28a, amended 15b, although rejected as duplicative at Step I, was addressed on the merits as well. (Dkt. 20-3, pp. 13, 18-24). As defendants note, the Step I grievances are identical. Plaintiff's grievance is as follows:

> ... I placed a kite in ARUS BOX for EXPEDITED/
> LEGAL MAIL so that my paper work could be filed with
> the court the ARUS REFUSE to send my paper work off
> th[e]n took me into ARUM office i explain to both of
> them that i had a dead-line with the court i also explain to
> them that i need 35 pages copys made to go with these
> papers the ARUM ask how many and i told him 35 pages
> he stated that was too many pages and also refused to
> send them out i had a call-out also ...
>
> ... ARUS to ASSIST me in getting my expedited legal
> mail out she refused she tune [sic] around and took me
> into the ARUM I explain to both the ARUM and ARUS

6

Report and Recommendation
Motion for Summary Judgment
*Brown v. Harrington*; Case No. 09-14211

that i needed this to go out today they refused to send this paper work out after he ask how many pages to have copyed I said 35 pages he stated that was to many pages to copy and than told me to leave the office i did i also had a call-out after leaving there office at 9;55am for 10;00am with classification officer and right next to that office is the GREVANCE COORINATOR OFFICE I ASK TO SPEAK WITH HER ABOUT MY PROBLEMS in the unit her name is SHEETS I told her that i did not want to write a grievance and can she help me to get my paper work sent out she stated no she could not help me with my legal paper work that the ARUS and ARUM job is to do that i came back to the unit the lady ARUS started going off on me saying im not going to just walk over to the grievance coorinator office and her on her and her staff I told her to stop rasing her voice at me yelling at me she stated that i had not but threating behavior in my file and they don,t play that her staff is going to fuck me up any where i go or be moved they are to ride my back i ask her could i leave and go back to my cell because of the way she was talking so as i was coming out of her office the ARUM was standing in the hall way so when i came out to go to my cell he step to me like he wanted to hit me

\* \* \*

... i had to move right quick to stop him from hitting me after i returned back to my cell the unit was called to go eat at 12;39 pm iwas standing at my door the officer refused to allow me out my cell to go eat i ask another prisoner to tell the officer to open my cell door and they refused to. stating that all the officer here is going to ride me while im here

IF any thing happen to me while be here at st. louis is because of the staff the officer a copy of this is being sent out to my family and friends and one is being sent the court and another one is being sent to this warden office and the grevance coorinator office if they have aprisoner or officer to kill me because of what,s in my file.

7

Report and Recommendation
Motion for Summary Judgment
*Brown v. Harrington*; Case No. 09-14211

(Dkt. 20-3, pp. 22-23).

## III. ANALYSIS AND CONCLUSIONS

### A. Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*,

8

Report and Recommendation
Motion for Summary Judgment
*Brown v. Harrington*; Case No. 09-14211

549 U.S. 199 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986), quoting, W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561, quoting, 11 Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine

issue of material fact." *Id*., quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

  B. <u>Exhaustion of Administrative Remedies</u>

    1. Legal standards

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

    2. Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126

S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 2387, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 2387-88. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in Jones was that the PLRA does not impose

additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

3. Events that occurred after February 6, 2009.

Plaintiff's complaint fairly tracks his grievance as to events and complaints that took place on February 6, 2009. (Dkt. 1). However, it is entirely clear that plaintiff did not exhaust any grievances arising from conduct that occurred that after that date, which he begins recounting on page five of complaint, line 12. (Dkt. 1, p. 5). According to plaintiff, he filed "complaints" about the threats with Warden Ludwick and ADW Best "brushed off his complaints," told Hollenbeck to throw out all the kites he filed, and told Sheets to throw out all of his grievances. (Dkt. 26).

Under some limited circumstances, an inmate may be excused from completing the applicable grievance process. *Baker v. Andes*, 2005 WL 1140725 (E.D. Ky. 2005), citing, *Giano v. Goord*, 380 F.3d 670, *677 (2d Cir. 2004) ("[I]nstructions by prison officials that are at odds with the wording of [exhaustion

13

Report and Recommendation
Motion for Summary Judgment
*Brown v. Harrington*; Case No. 09-14211

of administrative remedies regulations] might 'render' [ ] the formal grievance procedure unavailable [to the plaintiff] within the meaning of 42 U.S.C. § 1997e."); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding that "a remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under § 1997e(a)"). "Acts of prison officials which thwart a prison inmate's efforts to pursue his grievance remedies and prevent him from pursuing his remedies or obtaining a response thereto can be viewed as excusing the lack of complete exhaustion by a prison inmate." *Smith v. Baugh*, 2006 WL 2771039, *5 (M.D. Tenn. 2006), citing, *Owens v. Keeling*, 2006 WL 2471963 (6th Cir. 2006); *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004).

In this case, defendant offers admissible evidence via affidavit and documents made in the ordinary course of business that the only grievances plaintiff exhausted through Step III of the grievance procedure are the two identical grievances discussed above. (Dkt. 20, Ex. 1). In response, while plaintiff alleges that he submitted additional Step I grievances and that they were thrown away, he offers no admissible evidence to support these allegations. Simply, plaintiff offers no evidence to support his claim that additional grievances were ever submitted and offers no details about the claims allegedly grieved and the persons against whom he filed the grievances that he alleges were "thrown away." Plaintiff cannot create a genuine issue of material through bare allegations, unsupported by any

14

Report and Recommendation
Motion for Summary Judgment
*Brown v. Harrington*; Case No. 09-14211

admissible evidence. *Lowe v. Clift*, 2007 WL 2112672, *11 (E.D. Tenn. 2007) ("Plaintiff's reliance on bare allegations is not sufficient to create an issue of material fact or otherwise defeat a summary judgment motion."). In light of the evidence presented by defendant, who bears the burden of proof, and the lack of evidence presented by plaintiff, the undersigned suggests that the present circumstances are not such that "the evidence is susceptible of different interpretations or inferences by the trier of fact," which would preclude summary judgment in favor of the party bearing the burden of proof. *Hunt*, 526 U.S. at 553. Rather, the record evidence is susceptible to only one interpretation – that plaintiff did not exhaust his administrative remedies with respect any events that occurred after February 6, 2009.

    4.  Grievances dated February 6, 2009.

 Defendants also argue that because none of them are named in the grievances that were exhausted through Step III, plaintiff failed to properly exhaust his administrative remedies in accordance with *Woodford*, despite the fact that the grievances were addressed on the merits. The undersigned has rejected this interpretation of the MDOC's grievance procedure on numerous occasions because it unfairly holds the prisoner to compliance with the grievance procedure, but does not require the MDOC to enforce its own policy. Recently, the Sixth Circuit reached the same conclusion. *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir.

2010). In *Reed-Bey*, the Court similarly rejected the argument that by failing to name any specific individuals in the grievance, the inmate had failed to exhaust his administrative remedies. The Court held that "[e]nforcing internal prison rules even when prison officials do not and even when they proceed to address a grievance on the merits takes *Woodford* one step too far." *Id*. at 326. The Court further held that the plaintiff-prisoner "properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step." *Id*.

The same is true here. Defendants cannot assert a procedural default such as the failure to identify all those involved in the conduct being complained of where the MDOC proceeded to address the grievance on the merits. To the extent that some or all of the named defendants were not involved in the events that are the subject of the only grievance that has been exhausted by plaintiff, their arguments are better left to a motion for summary judgment based on a lack of personal involvement. For these reasons, the undersigned suggests that defendants' motion for summary judgment based on failure to exhaust the February 6, 2009 grievance should be denied.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion for summary judgment based on a failure to exhaust administrative remedies as to claims and events that occurred after February 6, 2009 be **GRANTED** and that defendants' motion for summary judgment based on a failure to exhaust administrative remedies based on the February 6, 2009 grievance be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 8, 2010                                s/Michael Hluchaniuk
                                                  Michael Hluchaniuk
                                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 8, 2010 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Christine M. Campbell, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Ronald Kirk Brown #181534 , MICHIGAN REFORMATORY, 1342 West Main Street, Ionia, MI 48846.

                                                  s/Darlene Chubb
                                                  Judicial Assistant
                                                  (810) 341-7850
                                                  darlene_chubb@mied.uscourts.gov